IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DAVID BROCK and PEGGY BROCK, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:07-CV-318 |
| ) | |
| ZURICH AMERICAN INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiffs filed suit in Oklahoma state court on January 19, 2007. The case was subsequently removed on April 23, 2007, and then transferred to this court on August 16, 2007. By their petition, plaintiffs seek judgment against defendant Zurich American Insurance Company ("Zurich") under the theories of breach of contract and "insurance bad faith" for failure to pay a claim related to plaintiff David Brock's ("Brock") stroke. Zurich denies that coverage is due under the Truckers Occupational Accident Insurance policy ("Policy") issued to Brock because the stroke was not solely the result of an accident.

Now before the court are defendant's summary judgment motions as to the claims of Brock [doc. 13] and his wife, Peggy Brock [doc. 16]. Plaintiffs have responded

to the motion [doc. 34], and defendant has replied [docs. 35, 36].[1]  For the reasons that follow, both motions will be granted.  This civil action will be dismissed.

I.

*Background*

Brock formerly worked for Melton Truck Lines ("Melton") on a contract basis as a driver.  Melton's principal place of business is Tulsa, Oklahoma.  In conjunction with his work, Brock purchased the Policy, which in material part covers "injuries," defined as "bodily Injury to an Insured Person caused by an Accident while coverage is in force under this Policy, which results directly from *and independently of all other causes* in a Covered Loss."  [Policy, p.8] (emphasis added).

In early January 2006, Brock drove a Melton truck from New Jersey to Texas.  Sometime between January 3 and January 10, 2006, he phoned Melton to advise that his delivery might be late due to injuries sustained in an on-the-job fall which occurred on approximately January 3, 2006.  On January 10, 2006, Brock suffered a stroke and was hospitalized in Laredo, Texas.

---

[1] Plaintiffs' response, including attachments, totals 57 pages.  The court's scheduling order [doc. 7, p.7] directs, "Upon filing any dispositive motion, or any other motion (or responsive pleading) that exceeds twenty-five (25) pages (including attachments), a courtesy hard copy shall be mailed or hand delivered to chambers."  Plaintiffs' counsel did not comply with that order.  Accordingly, on May 7, 2009, the court ordered [doc. 38] plaintiffs to provide chambers with a hard copy of their response.  Plaintiffs' counsel failed to comply with that order as well.  The court is troubled by this level of inattention to - if not blatant disregard of - its orders.

2

Brock contacted Zurich on January 12, 2006, and advised that he thought his fall and his stroke might be related. On January 19, 2006, Brock signed an Occupational Accident Proof of Loss form citing both the fall and the stroke. The following evidence was subsequently received by Zurich in its review of the claim:

> 1. The records of Brock's hospitalization at Doctors Hospital of Laredo, diagnosing him as having suffered a stroke: The records show Brock to be a 1.5 pack per day smoker with untreated hypertension, untreated high cholesterol, and a family history of strokes. The records further note that, prior to the stroke, "the patient reportedly took two or three pills of an unspecified fat burner to keep him awake while driving."
>
> 2. A questionnaire completed at Zurich's request by Dr. Alex Blanco of Doctors Hospital: Doctor Blanco did not opine as to the cause of the stroke.
>
> 3. A questionnaire completed at Zurich's request by treating physician Jay Patel: Dr. Patel answered "No" to the question, "Is Mr. Brock's condition caused solely by an injury? Injury means an accidental bodily injury that is caused solely by accidental means and is independent of all other causes."
>
> 4. An April 18, 2006 medical file review conducted at Zurich's request by nonexamining neurologist Ravi Tikoo: Dr. Tikoo concluded, "There is no evidence in these records that the claimant's stroke was caused by injury. . . . The claimant clearly appears to have pre-existing hypertension and was a smoker. These are two common risk factors for strokes."
>
> 5. A fax from Dr. Patel, answering Zurich's request that he review and respond to Dr. Tikoo's report: Dr. Patel wrote that Brock "had suffered a fall and a stroke. This patient has been referred to Dr. Scariano, a neurologist at Knoxville. You are advised to seek opinion from him."
>
> 6. A June 6, 2006 letter from Dr. Scariano summarizing a "chart review done on Mr. David Brock in regards to causation of his underlying neurological problems": Dr. Scariano opined that head trauma from Brock's on-the-job fall "lead to" his stroke. However, Dr. Scariano also opined that Brock "had significant risk factors which would have contributed to him having a stroke at that time."

3

7. A September 27, 2006 letter from Dr. Scariano, answering Zurich's request that he review and respond to Dr. Tikoo's report: Dr. Scariano wrote that "if he did suffer an injury to the posterior area of his head . . . which the patient related to me," then that head injury was the most likely cause of the stroke, notwithstanding "a history of other risk factors."

8. A December 30, 2006 medical file review conducted at Zurich's request by nonexamining neurologist Martin Wagner. Dr. Wagner concluded, "Mr. Brock suffered a [stroke] due to atherosclerotic cerebral vascular disease. His risk factors for cerebrovascular disease were untreated hypertension, hypercholesterolemia, and chronic tobacco use smoking 1.5 packs of cigarettes per day. An additional and very significant stroke risk factor was his use of stimulant medication. . . . The blow to the back of his head on 01/04/2006 did not play any role in causing his subsequent stroke."

On January 19, 2007, Zurich notified Brock's Tennessee attorney that it would soon issue a final coverage decision. Later that same day, Zurich received a fax from plaintiffs' Oklahoma attorney advising that the instant suit had been filed.

II.

*Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that its opponent has failed to establish an essential element of that party's case for which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to

4

present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255.

At summary judgment, it is not the court's role to weigh evidence or to determine credibility. *Id.* at 251-52. Nonetheless, "evidence in opposition to the motion that clearly is without any force is insufficient to raise a genuine issue," 10A Charles Allan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2727 (3d ed. 1998), and a witness may not create a factual issue merely by contradicting himself. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

III.

*Analysis*

According to its terms, the Policy "is governed by the laws of the state in which it is delivered." As such, the parties agree that Oklahoma law is to be applied to the resolution of defendant's summary judgment motions.

A. <u>Breach of Contract</u>

In material part, the Policy covers an "injury" to an "insured person." "Injury" is defined as "bodily Injury to an Insured Person caused by an Accident while coverage is in

5

force under this Policy, which results directly from and independently of all other causes in a Covered Loss." Courts interpreting similar insurance contracts under Oklahoma law have held that "provisions are binding which disallow recovery if [injury] is contributed to by bodily infirmity or disease, or if [injury] is the result of the concurrence of accidental injury and a pre-existing bodily infirmity or disease." *Minyen v. Am. Home Assurance*, 443 F.2d 788, 790 (10th Cir. 1971); *accord Hart v. Ins. Co. of N. Am.*, 458 F.2d 379, 380 (10th Cir. 1972); *Bewley v. Am. Home Assurance*, 450 F.2d 1079, 1081 (10th Cir. 1971); *Vowell v. Great Am. Ins.*, 428 P.2d 251, 253-54 (Okla. 1966); *Hammons v. Prudential Ins. Co. of Am.*, 717 S.W.2d 819, 820 (Ark. Ct. App. 1986) (applying Oklahoma law). "[T]he rule of proximate cause as applied ordinarily in negligence cases does not apply in construing liability under" accident policies such as the one presently at issue. *Bewley*, 450 F.2d at 1081 (citation omitted).

Although the remaining evidence of record is wholly unfavorable to his claim, Brock argues that Dr. Scariano's opinion letters raise a genuine issue of material fact precluding summary judgment. The court does not agree. Dr. Scariano's letters, while artfully drafted, are circular and equivocal. *See* 10A Charles Allan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2727 (3d ed. 1998) ("[E]vidence in opposition to the motion that clearly is without any force is insufficient to raise a genuine issue. Thus, neither frivolous assertions nor mere suspicions will suffice to justify a denial of summary judgment. . . . The evidence offered must have the force needed to allow a jury

6

to rely on it . . . ."). Dr. Scariano opined that "if" Brock in fact suffered a head injury, then that injury was the most likely cause of his stroke. Dr. Scariano elsewhere wrote most unequivocally, however, that Brock "had significant risk factors which **would have** contributed to him having a stroke at that time." (Emphasis added).

Viewing Dr. Scariano's letters in the light most favorable to Brock, this case nonetheless presents the exact circumstance described in *Minyen* - a condition that was at a minimum "the result of the concurrence of accidental injury and a pre-existing bodily infirmity or disease." Oklahoma law dictates that under the terms of the Policy there is no coverage. Summary judgment must therefore be granted on Brock's breach of contract claim.[2]

### B. Bad Faith

Because there is no liability under the Policy, Brock is also not entitled to recover on his bad faith claim. *See Davis v. GHS Health Maint. Org.*, 22 P.3d 1204, 1210 (Okla. 2001). Zurich's summary judgment motion as to Brock's claims must therefore be granted in its entirety.

---

[2] "Obviously, a matter for other authorities, and not for this court, is the overriding question of whether policies like this one, providing niche coverage, serve the interests of consumers at all. It is conceivable, if not probable, that policies like this one engender 'peace of mind' significantly in excess of that which is warranted." *Flores v. Monumental Life Ins.*, No. CIV-08-1067-F, 2009 WL 1138050, at *6 n.6 (W.D. Okla. Apr. 27, 2009).

7

## C. Plaintiff Peggy Brock

Plaintiffs do not contest that summary judgment should be granted in Zurich's favor as to Peggy Brock. Mrs. Brock was not a party to the Policy, and she has not endeavored to raise a genuine issue of material fact regarding her entitlement to recover for the alleged breach of a contract to which she was not even a party. Further, as with her husband, since there is no liability under the Policy, Peggy Brock is also not entitled to recover on her bad faith claim. Zurich's summary judgment motion as to Peggy Brock's claims must therefore be granted in its entirety.

An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge